ROBERT D. FISHER AND ORPHA L. FISHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fisher v. Commissioner
Docket No. 28630-89
United States Tax Court
T.C. Memo 1992-740; 1992 Tax Ct. Memo LEXIS 777; 64 T.C.M. (CCH) 1670; December 30, 1992, Filed *777 Decision will be entered under Rule 155. Petitioners made payments to Pre-Paid Legal Services, Inc. (Pre-Paid), to buy the right to receive 5 years' premium income on legal service contracts issued by Pre-Paid to clients in 1983 and 1984. Petitioners deducted the payments paid to Pre-Paid on their 1983 and 1984 tax returns. They should have amortized the payments over 5 years. On their 1983 and 1984 tax returns, petitioners omitted computer business income (1983 only), dividend income, and partnership income (1984 only). They also incorrectly reported interest expense and depreciation expense. Petitioners and respondent have settled the deficiencies; the dispute is whether petitioners are liable for additions to tax under sec. 6661(a), I.R.C. 1954. 1. Held: Petitioners did not have substantial authority for the positions taken on their tax returns. 2. Held, further: Petitioners did not adequately disclose their positions, except that they did adequately disclose their position regarding depreciation expense on their 1983 and 1984 tax returns. 3. Held, further: Respondent did not abuse her discretion in failing to waive the additions to tax. *778 4. Held, further: Imposition of the additions to tax does not violate petitioners' constitutional rights to due process and equal protection. 5. Held, further: Petitioners are liable for additions to tax under sec. 6661(a), I.R.C. 1954. For Petitioners: William E. Farrior. For Respondent: Donald E. Edwards and Nancy S. Vozar. CHABOT
CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined additions to tax for 1983 and 1984 under section 6661(a)[1] (substantial understatement of liability) against petitioners as follows: Additions to Tax
Year
Sec. 6661(a)
1983
$ 45,492
1984
54,751
The addition to tax under section 6661(a) for 1983 was determined by respondent as 25 percent of the $ 181,967.66 underpayment for that year. The addition to tax under section 6661(a) for 1984 was determined *779 by respondent as 25 percent of the $ 219,002.48 underpayment for that year. After concessions by respondent, [2] the issue for decision is whether petitioners are liable for additions to tax under section 6661(a). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. Background
When the petition was filed in the instant case, petitioners Robert D. Fisher (hereinafter sometimes referred to as Fisher) and Orpha L. Fisher, husband and wife, resided in Oklahoma City, Oklahoma. Fisher attended medical school in Oklahoma City and *780 was graduated in 1964. He participated in the surgical training program at the Johns Hopkins Hospital in Baltimore from 1964 to 1973, with periods in Bethesda, Md., and Boston, Mass., during that time. He was on the faculty of Vanderbilt Medical School in Nashville, Tenn., from 1973 to 1978. He returned to Oklahoma City in 1978 to enter private practice in cardiovascular surgery, and continued in that activity until the time of the trial. Fisher attended Oklahoma City University College of Law part time from 1986 to December 1989, when he was graduated from law school. Petitioner wife was a secretary in 1983 and 1984. Petitioners reported on their 1983 and 1984 tax returns the items of gross income shown in table 1. Table 1 Item
1983
1984
Wages, salaries
$ 658,327.94 $ 913,209
Interest income
5,681.85 8,845
Dividends
600.00 -0-
Insurance, reinsurance [1]
-0- 239,913
Rents [1]
195,854.68 312,148
Royalties
5,185.96 -0-
Partnerships
(103,012.08)
122,750
Subchapter S
-0- 99,660
Farm [1]
1,364.45 13,786
Other
104,800.00 5,473
*781 Table 2 shows the adjustments, to which petitioners agreed, that led to the understatements of income tax on which the section 6661 additions to tax are based. Table 2 Item
1983
1984
Ceding Commissions
$ 360,000.00 $ 360,000.00 Amortization of Ceding Commissions
-- (72,000.00)
Legal and Professional Fees
18,000.00 18,000.00 Amortization of Legal & Prof. Fees
-- (3,600.00)
Replacement Commissions
-- 68,918.00 Amortization of Replacement Commissions
-- (6,892.00)
Computer Business Income
20,038.36 -- Dividends -- OK Cardiovascular
5,973.67 3,736.78 Partnership Distribution (K-1)
-- 22,365.93 Schedule E-Interest Expense
90,791.36 52,912.92 Schedule E-Amtzn. of Const. Period Int.
(12,133.76)
(20,537.96)
Schedule E-Depreciation I
5,541.61 4,417.31 Schedule E-Depreciation II
11,125.42 26,999.16 Schedule F-Depreciation I
(4,494.86)
(188.78)
Adjusted Gross Agreed Adjustments
494,841.80 454,131.36 Itemized Agreed Adjustment
(11,335.00)
11,335.00 Total Agreed Adjustments
$ 483,506.80 $ 465,466.36 Insurance and Reinsurance
The understatements on which the section 6661 additions are based are principally due to *782 petitioners' deductions of payments [3] to Pre-Paid Legal Services, Inc. (hereinafter sometimes referred to as Pre-Paid), which payments should have been capitalized. Pre-Paid began business in 1973 and was one of the first companies of its type to provide prepaid legal service benefits. *783 Pre-Paid's primary business was the issuance of legal service contracts to its individual members in return for monthly premiums. The legal service contract sold by Pre-Paid provided for the payment of specified legal fees incurred by the individual member. By 1984, Pre-Paid was marketing legal service contracts in 22 States and was a publicly held company listed on the NASDAQ National Market System. During 1983 and 1984 Frank Jaques (hereinafter sometimes referred to as Jaques) was the general counsel to Pre-Paid and a director of Pre-Paid. In 1990 Jaques' share holdings of Pre-Paid were the second largest. Fisher has known Jaques since high school, in Ada, Oklahoma. Jaques was petitioners' attorney and financial advisor when petitioners resided in Nashville, and after petitioners returned to Oklahoma in about 1978. Fisher heard about Pre-Paid through Jaques. Fisher and Jaques often discussed Pre-Paid while Jaques was petitioners' attorney. Jaques urged petitioners to buy stock of Pre-Paid. In the early 1980's petitioners bought Pre-Paid stock for about $ 50,000 and sold it about 2 years later for a profit of about $ 25,000. Petitioners leased a main frame computer to *784 Pre-Paid in December 1982, and sold the computer to Pre-Paid 5 years later. Petitioners also invested in several other investments with Pre-Paid, including the following: (1) A joint venture in 1984 to develop a home monitoring system for personal crises; (2) an aircraft lease in 1985; (3) two or three business auto leases in 1986; (4) a stock purchase in December 1985 for about $ 300,000; and (5) a debenture program in 1986. Petitioners also owned several rental houses and an apartment building, and invested in an auto parts business. Fisher had an extensive background in investing. In 1983 Jaques urged petitioners to invest in a reinsurance program at Pre-Paid. Reinsurance is a common business practice for many insurance companies. Basically, it is a contract whereby risk is transferred between two parties. The parties to the contract are the ceding company (reinsured) which wrote the original policy, and the assuming party (reinsurer) which pays a ceding commission and accepts the business risks and rewards of the insurance (claims and premium income). In indemnity reinsurance, liability remains the direct responsibility of the ceding company and the policyholder is not *785 notified of the reinsurance transaction. Jaques showed to Fisher an Oklahoma statute on insurance companies and told Fisher that an individual could be an insurer under Oklahoma law. Fisher knew that Jaques was investing in Pre-Paid's reinsurance program himself. Jaques told Fisher that he had discussed the reinsurance program of Pre-Paid with several accountants and that there was an accounting firm that Fisher was familiar with that was willing to offer an opinion on the current deductibility of these payments. When petitioners moved from Nashville to Oklahoma, Jaques recommended that Fisher change his accounting firm to Fentem, Quinten & Thomas, Inc., Certified Public Accountants (hereinafter sometimes referred to as Fentem CPAs). Fisher did so. Jaques put together a pooling agreement which all of the investors and reinsurers were obliged to sign whereby each individual participant in this reinsurance program pooled the contracts that the investors had purchased into one large pool to be managed and overseen by L.N. Fentem Management Co. (hereinafter sometimes referred to as Fentem Management), where Fentem Management would administer, report, and distribute claims experience *786 among the individual reinsurers. In December 1983, Fisher [4] entered into a written contract with Pre-Paid. By the terms of the contract, Fisher was to make payments to Pre-Paid and indemnify Pre-Paid for administrative expenses and claims under certain prepaid legal insurance contracts issued by Pre-Paid. The contract provides that "From January 1, 1984 through December 31, 1988, Principal [Fisher] will receive all premium income from such memberships [in effect, insurance contracts] subject to the following expenses which will be paid Agent [Pre-Paid] solely from the premium collected by Agent on behalf of Principal". Pre-Paid also agreed to administer the memberships for an administrative fee not to exceed 30 percent of the gross premium income. Pre-Paid guaranteed a certain amount of gross premium income each year to petitioners, and agreed to replace canceled memberships subject to the payment of a replacement fee. The transaction provided Pre-Paid with additional cash reserves to be used in the expansion of its business. *787 Fisher [5] also entered into an agreement in 1983 (effective January 1, 1984) with Fentem Management. The agreement provides that all the revenues and operating expenses attributable to the reinsurance program pooling agreements are to be pooled and any profits or losses are to be distributed. Pursuant to the agreement, Fentem Management would hire C.P.A.'s and attorneys to perform accounting and legal services that would be needed to manage the reinsurance program. Petitioners [6] entered into similar contracts with Pre-Paid and Fentem Management in 1984. Petitioners *788 received a letter regarding the reinsurance transaction from Fentem CPAs stating that "Commissions, administrative expenses and claims paid by Principal [Fisher] to Agent [Pre-Paid] are fully deductible when paid by Principal and are ordinary income to Agent." Petitioners also received a letter dated March 28, 1984, from Fentem CPAs stating that it was the opinion of the accounting firm that "the expenses related to your * * * insurance contracts should be reported as follows: Commissions
$ 360,000.00
Line 10, Schedule C
Accounting
$  18,000.00
Line 19, Schedule C"
Petitioners also received a copy of a letter written to Fentem Management by Jaques, who was also the attorney for Fentem Management, stating that "all the activities of pool, [Pre-Paid] and [Fentem Management] during * * * 1984 have been legal and proper". None of the three letters cites any legal authority. Petitioners' 1983 and 1984 tax returns were prepared by Duard Thomas (hereinafter sometimes referred to as Thomas) of Fentem CPAs and reviewed by Jaques. Thomas and Jaques then reviewed the tax returns with Fisher. Petitioners deducted their payments to Pre-Paid in the year paid in accordance with the *789 March 28, 1984, letter from Fentem CPAs. Respondent disallowed the deductions on petitioners' 1983 and 1984 tax returns. The dispute was settled by allowing the payments to be amortized over the 5-year terms of the contracts. More specifically, on their 1983 tax return Schedule C, petitioners deducted $ 360,000 on line 10 (preprinted "Commissions") and $ 18,000 on line 19 (preprinted "Legal and professional services") for a net loss of $ 378,000. On line A of that schedule, petitioners describe Fisher's "Main business activity" as "Insurance". On their 1984 tax return, petitioners have two Schedules C. On one, petitioners reported $ 239,913 income (lines 1a, 1c, and 5) and deducted $ 258,298 for a net loss of $ 18,285. The deductions are as follows: $ 81,305 on line 10 (preprinted "Commissions"), $ 50,731 on line 17 (preprinted "Interest on business indebtedness"), $ 72,182 on line 30a (typed "Casualty claims"), and $ 53,980 on line 30b (typed "General and adm"). On line A of that schedule, petitioners describe Fisher's "Main business activity" as "Reinsurance -- Prepaid Reinsurance Pool - 1983." On the other 1984 Schedule C, petitioners deducted $ 378,000 on line 31, with *790 no breakdown of categories, for a net loss of $ 378,000. On line A of that schedule, petitioners describe Fisher's "Main business activity" as "Reinsurance -- Prepaid Reinsurance Pool - 1984". Petitioners' tax return explanation of Fisher's insurance activities appears only on Schedule C; no attachment to their 1983 or 1984 income tax returns deals with this matter. Computer Business Income
Petitioners omitted computer business income in the amount of $ 20,038.36 for 1983. See supra table 2. After petitioners returned to Oklahoma from Tennessee, Fisher entered into a partnership with an in-law to open an auto parts business. The business used a computer to keep track of the inventory. In the course of auditing petitioners' 1983 and 1984 tax returns, respondent determined -- and petitioners agreed -- that petitioners' 1979 and 1980 tax treatment of the computer expense required the above-noted 1983 income adjustment. Petitioners' 1983 tax return does not show any item which, on its face, relates to this adjustment or to the auto parts business partnership. Dividends -- Oklahoma Cardiovascular
Petitioners omitted constructive dividend income in the amounts *791 of $ 5,973.67 for 1983 and $ 3,736.78 for 1984. See supra table 2. During that period, Fisher was one of six cardiac surgeons associated in a corporation. These adjustments are based on automobile or travel expenses that, it was concluded, were properly Fisher's personal nonbusiness expenses and not business expenses of the corporation. Petitioners' 1983 tax return shows $ 600 dividends from Oklahoma Cardiovascular and Thoracic and $ 626,391.90 Form W-2 income to Fisher from R. Darryl Fisher, M.D., Inc. Petitioners' 1984 tax return shows $ 99,660 subchapter S income from R. Darryl Fisher, M.D., Inc. Petitioners' 1984 tax return in evidence does not have any Form W-2 attached to it. Petitioners' 1983 and 1984 tax returns do not show any item which, on its face, relates to Oklahoma Cardiovascular Associates, Inc., or Oklahoma Cardiovascular Surgeons Group, which Fisher identified as the source of the constructive dividends. Partnership Distribution
Petitioners omitted partnership distribution income in the amount of $ 22,365.93 for 1984. See supra table 2. Fisher was in a partnership that was building houses and renting them to tenants. A friend of his asked *792 if the partnership could build a house for the friend and rent it to tenants. This was done. After a time, the friend asked Fisher to buy the friend's interest in the partnership, which Fisher did. The friend reported on his tax return what he understood to be his partnership income for the year in which he sold his interest to Fisher. On audit of the friend's income tax return, it was concluded that the income from the partnership interest was properly reportable by Fisher and not by the friend. Petitioners' 1984 tax return shows on Schedule E $ 72,169 partnership net income from Ada Property Investors -- 1981 and $ 50,581 from Ada Property Investors -- 1982. Schedule E -- Interest Expense
Petitioners deducted too much Schedule E rental interest in the amounts of $ 90,791.36 for 1983 and $ 52,912.92 for 1984. See supra table 2. Petitioners were in the process of building a large apartment building in Ada in 1983 and 1984. They were doing so without long-term financing. On Thomas' advice, they deducted the interest currently. On respondent's audit, petitioners agreed that this was construction period interest, deductible over the term of the later-negotiated *793 long-term loan. Petitioners' tax returns show on Schedule E, line 9 (preprinted "Interest"), deductions in the amount of $ 145,870.74 (for 1983) and $ 226,039 (for 1984). The property is described as "Rental" (for 1983) or "Rental Houses & apts." (for 1984). Schedule E -- Depreciation
Petitioners deducted too much Schedule E rental depreciation in the amounts of $ 5,541.61 (I -- 1983), $ 11,125.42 (II -- 1983), $ 4,417.31 (I -- 1984), and $ 26,999.16 (II -- 1984). See supra table 2. When petitioners bought rental properties in Ada, Jaques allocated in the purchase contracts the purchase prices among land, buildings, and specific components. Thomas showed those allocations on petitioners' tax returns, and computed the corresponding depreciation amounts. The Schedule E -- II adjustments resulted from audit reallocations among the components. The Schedule E -- I adjustments resulted from audit reallocations between ACRS items and other items. Petitioners' tax returns show on Schedule E, line 18 (preprinted "Depreciation expense (see Instructions)"), deductions in the amounts of $ 131,024.96 (for 1983) and $ 234,607 (for 1984). Attached to petitioners' 1983 tax return *794 is a four-page schedule detailing the component allocations for 15 properties, as well as a 16th category for mobile furniture and fixtures, and a 17th category for capitalized management fee. By way of illustration, the breakdowns for two of these properties are shown in table 3. Table 3 LIFE
12/31/82
1983
ACQ.
DESCRIPTION
BASIS
CATEGORY
RATE
RESERVE
DEPRECIATION
824 East 7th
1977
Lot
1,000.00
1977
House
6,000.00
5.00%
1,650.00
300.00
1977
Garage Apts (2)
6,000.00
5.00%
1,650.00
300.00
1977
Furn. & Fixtures
13,000.00
12.50%
9,312.50
1,625.00
1977
Furn. & Fixtures
10,590.00
12.50%
7,180.62
1,323.75
West 16th Duplexes
5/82
Land
5,000.00
Building #1
35,000.00
15 yrs.
11.0%
3,150.00
3,850.00
Building #2
35,000.00
15 yrs.
11.0%
3,150.00
3,850.00
Sidewalks & Patio
5,000.00
5 yrs.
22.0%
750.00
1,100.00
Trees & Shrubbery
3,600.00
15 yrs.
11.0%
324.00
396.00
Carport
5,000.00
5 yrs.
22.0%
750.00
1,100.00
Carpet
2,000.00
5 yrs.
22.0%
300.00
440.00
Storage Building
1,000.00
5 yrs.
22.0%
150.00
220.00
Night lights
1,000.00
5 yrs.
22.0%
150.00
220.00
Fence
2,000.00
5 yrs.
22.0%
300.00
440.00
*795 Attached to petitioners' 1984 tax return is a seven-page schedule detailing the component allocations for 16 properties, as well as a 17th category for mobile furniture and fixtures, an 18th category for capitalized management fee, and a 19th category for an automobile. The 1984 breakdowns for the two table 3 properties are shown in table 4. Table 4 ACQ
DESCRIPTION
BALANCE
CHANGES
BALANCE
LIFE
METHOD
RESERVE
824 East 7th
1977
Land
1,000
House
6,000
5%
1,950.00
Garage Apt. (2)
6,000
5%
1,950.00
Furniture
13,000
12.5%
10,937.50
& Fixtures
Furniture
10,530
12.5%
8,504.37
& Fixtures
West 16th Duplex
5/82
Land
5,000
Building #1
35,000
(6,375)
28,625
15 yrs.
9%
7,000.00
Building #2
35,000
(4,675)
30,325
15 yrs.
9%
7,000.00
Sidewalks & Patio
5,000
5 yrs.
21%
1,850.00
Trees & Shrubbery
3,600
15 yrs.
9%
720.00
Carport
5,000
5 yrs.
21%
1,850.00
Carpet
2,000
5 yrs.
21%
740.00
Storage Building
1,000
5 yrs.
21%
370.00
Night Lights
1,000
5 yrs.
21%
370.00
Fence
2,000
5 yrs.
21%
740.00
DEPRECIATION
ACQ
DESCRIPTION
CHARGES
SUSTAINED
RESERVE
824 East 7th
1977
Land
House
300.00
2,250
Garage Apt. (2)
300.00
2,250
Furniture
1,625.00
12,560
& Fixtures
Furniture
1,323.75
9,828
& Fixtures
West 16th Duplex
5/82
Land
Building #1
(1,849)
3,150.00
8,301
Building #2
(1,356)
3,150.00
8,794
Sidewalks & Patio
1,050.00
2,900
Trees & Shrubbery
324.00
1,043
Carport
1,050.00
2,900
Carpet
420.00
1,160
Storage Building
210.00
580
Night Lights
210.00
580
Fence
420.00
1,160
*796 On their 1983 tax return, petitioners show a tax liability of $ 11,674; [7] their correct liability is $ 194,522.42. On their 1984 tax return, petitioners show a tax liability of $ 99,166; [8] their correct liability is $ 318,148.68. Petitioners asked respondent to waive all or part of the substantial understatement additions to tax pursuant to section 6661(c) for 1983 and 1984. Respondent refused to waive any of the substantial understatement additions to tax. * * * The issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies was not the primary and predominant *797 business activity of either petitioner during either 1983 or 1984. The relevant facts affecting the tax treatment of all the adjustment items (see supra table 2), except the Schedule E depreciation items, are not adequately disclosed in petitioners' tax returns for 1983 and 1984; the facts as to the Schedule E depreciation items are adequately disclosed on both of the tax returns. Respondent's refusal to waive the additions to tax was not an abuse of discretion. OPINION Section 6661(a) provides for an addition to tax in the amount of 25 percent of any underpayment attributable to a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). (The parties agree that petitioners have substantial understatements for both years before us.) If an item is not attributable to a tax shelter (see supra note 2), then the understatement shall be reduced on account of the item, and the addition to tax accordingly reduced, if (1) the taxpayer's treatment of the item was based on substantial *798 authority, or (2) the taxpayer adequately disclosed on the tax return or in a statement attached to the tax return the relevant facts affecting the item's tax treatment. Sec. 6661(b)(2)(B); [9]Accardo v. Commissioner, 942 F.2d 444, 453 (7th Cir. 1991), affg. 94 T.C. 96 (1990). *799 Respondent has authority to waive all or any part of this addition to tax, under circumstances specified in the statute. Sec. 6661(c). We consider first, whether petitioners had substantial authority for the positions taken on their tax returns; second, whether there was adequate disclosure of relevant facts on petitioners' tax returns; third, whether respondent abused her discretion in not waiving the section 6661 additions; and fourth whether application of the 25-percent section 6661 additions violates petitioners' constitutional due process and equal protection rights. I. Substantial Authority
Petitioners contend they had substantial authority for the position taken on their tax returns that the payments to Pre-Paid were currently deductible. [10] Their analysis is that (1) ceding commissions in a reinsurance setting are currently deductible for life insurance companies, sec. 809(c)(1), and for casualty and other insurance companies, sec. 832(c); (2) ceding commissions in a reinsurance setting are functionally equivalent to agents' commissions for primary insurance, and such agents' commissions are currently deductible; and (3) "Since Pre-Paid * * * was operated through *800 its subsidiary, Pre-Paid Legal Casualty, Inc., as an insurance company in the State of Oklahoma, the Petitioner, as a reinsurer, believed that he was entitled to the same treatment afforded insurance companies, i.e., the current deductibility of ceding commissions in a reinsurance transaction." Respondent contends that petitioners did not have substantial authority to support their position that the payments were currently deductible. Respondent contends that the benefits of Fisher's payments extend *801 over 5 years, and so ordinarily the deductions must be amortized over that same time period. Respondent contends that only insurance companies are excepted from that rule and may currently deduct ceding commissions pursuant to the provisions of subchapter L (sections 801 through 844). Respondent argues that petitioners have not established that Fisher qualifies as an insurance company for purposes of subchapter L. We agree with respondent. Firstly, we consider what constitutes substantial authority for purposes of section 6661(b)(2)(B)(i). Secondly, we examine what authorities petitioners relied on, and determine if they constitute substantial authority. There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. Accardo v. Commissioner, 942 F.2d at 453; Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988); Schirmer v. Commissioner, 89 T.C. 277, 283 (1987); sec. 1.6661-3(b), *802 Income Tax Regs.[11]
*803 All authorities relevant to the tax treatment of an item, including contrary authorities, are taken into account in determining whether substantial authority exists and the weight of those authorities is determined in light of the pertinent facts and circumstances. Sec. 1.6661-3(b)(1), Income Tax Regs.
In determining whether there is substantial authority for a taxpayer's position, the following authorities are considered: applicable provisions of the Internal Revenue Code and other statutory provisions; temporary and final regulations construing such statutes; court cases; administrative pronouncements (including revenue rulings and revenue procedures); tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; and congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers.
Antonides v. Commissioner, 91 T.C. at 702; Schirmer v. Commissioner, 89 T.C. at 284; sec. 1.6661-3(b)(2), Income Tax Regs.
The *804 weight of the authorities for the tax treatment of an item is determined by the same analysis that a court would follow in evaluating the treatment of the item. Thus, if an authority is materially distinguishable on its facts from the facts of the case at issue, then the authority is of little relevance. Antonides v. Commissioner, 91 T.C. at 702-703, affd. 893 F.2d at 660; sec. 1.6661-3(b)(3), Income Tax Regs.
The taxpayer's belief that the authorities regarding the tax treatment of an item constitute substantial authority is not to be taken into account in determining whether there is substantial authority. Schirmer v. Commissioner, 89 T.C. at 284; sec. 1.6661-3(b)(1), Income Tax Regs.
Petitioners direct our attention to Okla. Stat. tit. 36, sections 103 and 104 (1980), under which Fisher understood a natural person could be an "insurer" in the years in issue. Petitioners contend that since the Oklahoma statute provides that an individual may be an insurer for the purposes of the State statute that it follows that the individual may be an insurance company for purposes of the Federal *805 statute. Petitioners state that "Substantial authority can be found for the Petitioners' position in Sections 832(c), 809(c)(1), 809(d)(12)[,] and 162, Treas. Reg. §§ 1.809-5(a)(7)(ii) and 4(a)(1)(iii), Rev. Rul. 70- 552, and the Tax Court decisions in Stern [v. Commissioner, 66 T.C. 91 (1976),] and Beneficial Life [Insurance Co. v. Commissioner, 79 T.C. 627 (1982)], supra." The difficulties with petitioners' claimed "substantial authority" are that (1) State labels do not control, (2) the claimed Federal tax treatment is available only to an "insurance company", (3) Fisher was not an insurance company, and (4) petitioners do not point us to any "substantial authority" that suggests Fisher might have been an insurance company. Although State law creates legal interests and rights, the Federal revenue acts designate how the interests or rights so created shall be taxed. United States v. Mitchell, 403 U.S. 190, 197 (1971), and cases there cited. Once rights are obtained under State law, whatever they are called, these rights are subject to the Federal *806 definition of taxability. Helvering v. Stuart, 317 U.S. 154, 162 (1942). If an interest or right created by State law is intended by the Congress to be taxed, then the Federal law prevails no matter what name is given to the interest or right by State law. Morgan v. Commissioner, 309 U.S. 78, 81 (1940). In interpreting the words used in a Federal revenue act, State law is not controlling unless the Federal statute "by express language or necessary implication, makes its own operation dependent upon state law." Heiner v. Mellon, 304 U.S. 271, 279 (1938); Burnet v. Harmel, 287 U.S. 103, 110 (1932). It does not appear (and petitioners have not asserted) that the Federal statute is dependent on the Oklahoma law. Thus, even if Oklahoma permits Fisher to conduct insurance or reinsurance activities as an individual, that does not control whether Fisher is an insurance company under Federal law. Section 832(c) allows certain deductions "In computing the taxable income of an insurance company subject to the tax imposed by section 831". Section 831(a) provides *807 the general rule that taxes are to be "computed as provided in section 11". Section 11 imposes income taxes on corporations. Petitioners do not contend that they (or Fisher alone, with regard to the Pre-Paid payments) should be taxed as a corporation. In their tax returns for 1983 and 1984, and in the settlement of the adjustments, petitioners have proceeded on the basis that they are to be taxed as individuals and not as a corporation. The definition of insurance company that applies to the years in issue [12] is in section 1.801-3(a)(1), Income Tax Regs., which provides as follows: § 1.801-3. Definitions. * * * (a) Insurance company. (1) The term "insurance company" means a company whose primary and predominant business activity during the taxable year is the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies. Thus, though its name, charter powers, and subjection to State insurance laws are significant in determining the business which a company is authorized and intends to carry on, it is the character of the business actually done in the taxable year which determines whether a company is taxable as an insurance *808 company under the Internal Revenue Code.
Also, sections 809(c)(1) and 809(d)(12), sections 1.809-5(a)(7)(iii) and 1.809-4(a)(1)(iii), Income Tax Regs., and Rev. Rul. 70-552, 1970-2 C.B. 141, all depend on Fisher's being entitled to be treated *809 as an insurance company, as defined in section 1.801-3(a)(1), Income Tax Regs.
As shown in table 1, supra, the predominant source of petitioners' gross income for the years in issue was wages and salaries. In each of the years even petitioners' rental activities produced more gross income than did Fisher's insurance and reinsurance activities. Also, petitioners' tax returns showed their occupations as "Medical Doctor" and "Secretary". We conclude, and we have found, that the issuing of insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies was not the primary and predominant business activity of either petitioner during either 1983 or 1984. We conclude that the cited Internal Revenue Code provisions, regulations, revenue ruling, and the Oklahoma statute provide no support for the proposition that Fisher qualifies as an "insurance company" under the regulations, nor do they support the proposition that Fisher otherwise qualifies as an insurance company under the statute, nor do they support the proposition that petitioners are entitled to currently deduct their payments to Pre-Paid even though Fisher is not an insurance company. Petitioners *810 also cite as substantial authority for their position two law review articles [13] that were written in 1983 and 1984 on the deductibility of reinsurance ceding commissions by insurance companies. Conclusions reached in treatises and legal periodicals are not authority for purposes of determining substantial authority. However, the authorities underlying the conclusions, where applicable to the facts of a particular case, may constitute substantial authority for the tax treatment of an item. Sec. 1.6661-3(b)(2), Income Tax Regs. Petitioners assert that each of the cited articles indicates that this Court's opinion in Beneficial Life Insurance Co. v. Commissioner, 79 T.C. 627 (1982), supports the immediate deductibility of ceding commissions. Petitioners assert that one of the articles refers to a 1961 technical advice memorandum which "held that the commission expenses incurred in securing multiple year policies were 'deductible in full in the taxable year in which the contract became effective.'" However, the taxpayer in Beneficial Life clearly was an insurance company, and there is no indication that the taxpayer referred to in the technical *811 advice memorandum was not an insurance company. Further, petitioners do not suggest that either Beneficial Life or the technical advice memorandum indicates that an individual in Fisher's circumstances could qualify as an insurance company, or that such an individual could be entitled to the claimed tax treatment even if that individual were not an insurance company. Accordingly, we conclude that the law review articles are not substantial authority for the position that petitioners were entitled to currently deduct the payments. Petitioners cite Stern v. Commissioner, 66 T.C. 91 (1976), in which the taxpayers were individuals. However, the deductions on account of ceding commissions were allowable to a corporation which clearly *812 was an insurance company. The individual taxpayers sought to obtain the benefits of those deductions because the insurance company was a "subchapter S corporation" and the taxpayers were the shareholders thereof. In the instant case, Fisher operated the activity as a Schedule C business. Stern is not authority for Fisher's being able to deduct the payments when paid. Petitioners also direct our attention to the Court of Appeals' opinion in Merit Life Ins. Co. v. Commissioner, 853 F.2d 1435 (7th Cir. 1988), affg. T.C. Memo. 1986-480. It is not clear to us what the point is of this reference, because (1) Merit Life was issued after petitioners took their positions on their tax returns and so it could not have been a factor in substantial authority under section 1.6661-3(b)(4)(iii), Income Tax Regs. (see supra note 11); (2) Merit Life was disapproved by the Supreme Court the next year, Colonial Am. Life Ins. Co. v. Commissioner, 491 U.S. 244 (1989), and the Court of Appeals' decision in Merit Life was vacated by the Supreme Court, Commissioner v. Merit Life Ins. Co., 492 U.S. 902 (1989); *813 and (3) Merit Life was an interpretation of section 809(c) as applied to what clearly was an insurance company. So, even before the Supreme Court's opinion, Merit Life provided no authority for the proposition that Fisher was entitled to currently deduct all of the payments. On answering brief petitioners cite Rev. Rul. 83-132, 1983-2 C.B. 270, for the proposition that an individual can be an insurance company for purposes of subchapter L. Setting aside the question of whether the lesson of that ruling can properly be applied to an individual (the ruling hypothesizes that the taxpayer "is organized as a noncorporate business entity under the law of [State] X"), the ruling by its terms applies only if the "entity's primary and predominant business activity during the tax year is the underwriting of insurance risks". As we have noted, petitioners have failed to show that Fisher met this test. Accordingly, we conclude that Rev. Rul. 83-132 is not substantial authority for petitioners' position. We hold for respondent on this issue. (See supra note 10, regarding other adjustments.)
*814 II. Adequate Disclosure
[14]
Insurance and Reinsurance
Petitioners argue that they adequately disclosed on the Schedules C of the tax returns their position regarding the current deductibility of the payments to Pre-Paid. Respondent contends that petitioners did not adequately disclose their position on their tax returns. We agree with respondent. A taxpayer's position may be adequately disclosed either in a statement attached to the tax return, or on the tax return itself. Sec. 6661(b)(2)(B)(ii); Accardo v. Commissioner, 942 F.2d at 453; *815 Antonides v. Commissioner, 91 T.C. at 701. In the instant case, petitioners did not attach a statement to their 1983 or 1984 tax return explaining their position regarding the Pre-Paid payments deducted on their tax returns. Thus, we examine whether petitioners adequately disclosed their position on their tax returns. Disclosure can be accomplished under section 6661 by providing on the tax return sufficient information to enable respondent to identify the potential controversy involved. The standard for section 6661 requires more disclosure than that which is necessary to avoid the 6-year statute of limitations under section 6501(e)(1)(A). Schirmer v. Commissioner, 89 T.C. at 285-286. The regulations provide that respondent may promulgate revenue procedures which prescribe the circumstances in which information provided on the tax return will constitute adequate disclosure for purposes of section 6661. Sec. 1.6661-4(c), Income Tax Regs.Rev. Proc. 84-19, 1984-1 C.B. 433, and Rev. Proc. 85-19, 1985-1 C.B. 520, describe the disclosure *816 that constitutes adequate disclosure for purposes of section 6661 for tax returns filed in 1984 and 1985. Although both revenue procedures list several categories of expenses, none of the categories address the types of payments reported by petitioners on their tax returns. Petitioners concede that the revenue procedures do not show Schedule C as adequate disclosure for the Pre-Paid deductions. Petitioners' contention on this point is as follows: It [the cited revenue procedure] does not list Schedule C, but it does state that repairs as opposed to capital expenditures can be adequately disclosed by the amount stated as trade or business expenses on the return. [15]
*817 It is evident that petitioners do not fall into the specific safe harbors provided by the revenue procedures. We regard petitioners' contention as essentially an argument by analogy, and we consider that contention in the course of our analysis infra. In the instant case, the potential controversy that must be disclosed is whether petitioners were entitled to deduct all of the payments to Pre-Paid in the first year of the contracts or were required to capitalize the payments and amortize the deductions over the 5-year term of the contracts. Nothing on the tax returns sufficed to enable respondent to identify this potential controversy. Petitioners point to the revenue procedures' safe harbor with respect to repairs and capital expenditures. Although the concept may be substantially similar, nothing in the record suggests that unexplained deductions of "Commissions" or "Legal and professional services" would alert respondent to the significant possibility that a capital-expenditure-v.-current-expense dispute was implicated. The tax returns did not suggest that the expenditures were "up-front" payments that entitled Fisher to benefits over 5-year periods. We conclude that *818 petitioners did not adequately disclose the payments on their 1983 and 1984 tax returns. See Lair v. Commissioner, 95 T.C. 484, 494 (1990). We hold for respondent on this issue. Dividends -- Oklahoma Cardiovascular Expenses
Petitioners contend that the professional corporation expenses that were disallowed and required to be reported as dividends on their individual tax returns were reported on corporate tax returns and were thus adequately disclosed. Respondent contends that the dividend income was not adequately disclosed on petitioners' individual tax returns because the income was omitted. We agree with respondent. Whether or not the corporation expenses that were disallowed were reported on the corporate tax return, the corporate dividends were omitted from petitioners' 1983 and 1984 individual tax returns. There was nothing disclosed on petitioners' 1983 or 1984 individual tax returns to alert respondent to the potential controversy. We conclude that there was not adequate disclosure of the corporate dividends on petitioners' individual tax returns. We hold for respondent on this issue. Partnership Distribution
Petitioners *819 contend that the partnership income was reported on the partnership's and the partners' tax returns and thus was adequately disclosed. Respondent contends that the partnership income was not adequately disclosed on petitioners' individual 1984 tax return because the income was omitted from that tax return. We agree with respondent. The adjustment is based on the conclusion that petitioners should have reported the income attributable to the partnership interest that Fisher bought during 1984, as well as the interest he had previously acquired. Petitioners' 1984 tax return does not provide any information about Fisher's purchase of a partnership interest, or any clue that there might be a dispute of the sort that led to the adjustment. We conclude that there was not adequate disclosure of the additional partnership income on petitioners' 1984 tax return. We hold for respondent on this issue. Schedule E -- Interest Expense
Petitioners contend that they adequately disclosed the interest expense deductions on their 1983 and 1984 tax returns. Respondent contends that petitioners did not adequately disclose the interest expense on their 1983 and 1984 tax returns. We agree *820 with respondent. The dispute that developed as to the Schedule E interest expense deductions was resolved by a conclusion that part of the interest was construction period interest that should have been capitalized. The Schedule E showed substantial rental income. (See supra table 1.) Nothing on petitioners' tax returns suggests that there might be a construction period interest problem. We hold for respondent on this issue. Schedule E -- Depreciation
Petitioners contend that they adequately disclosed the depreciation expense on their 1983 and 1984 tax returns. Respondent contends that petitioners did not adequately disclose the depreciation expense on their 1983 and 1984 tax returns. We agree with petitioners. As our findings show (see supra tables 3 and 4), petitioners attached to their tax returns extensive schedules showing component breakdowns of cost allocations for each of their rental properties. The depreciation adjustments result from audit reallocations among components and as between ACRS items. Respondent does not suggest what more petitioners could have done. We will not reprise our extensive findings of facts. We conclude that petitioners *821 adequately disclosed the depreciation expense on their 1983 and 1984 tax returns. We hold for petitioners on this issue. III. Waiver of Addition to Tax
Petitioners contend that respondent has abused her discretion in failing to waive all or part of the substantial understatement penalty for 1983 and 1984 pursuant to section 6661(c). Petitioners argue that they made substantial efforts to comply with the tax laws, had reasonable cause for the understatements, and acted in good faith with respect to each item on the notice of deficiency. Respondent contends that she did not abuse her discretion in failing to waive the substantial understatement penalty for 1983 and 1984. Respondent contends that petitioners did not have reasonable cause for the understatements and did not act in good faith with respect to each item in the notice of deficiency. We agree with respondent. Section 6661(c), [16] provides that the Secretary may waive all or part of the addition to tax under section 6661 if the taxpayer shows: (1) There was reasonable cause for the understatement, and (2) the taxpayer acted in good faith. The denial of a waiver by the Secretary is reviewable by this Court on an *822 abuse-of-discretion basis. Karr v. Commissioner, 924 F.2d 1018, 1026 (11th Cir. 1991), affg. Smith v. Commissioner, 91 T.C. 733 (1988); Mailman v. Commissioner, 91 T.C. 1079, 1082-1084 (1988). In other words, it is not enough for petitioners to persuade us that we would have waived the addition to tax -- petitioners have the burden of persuading us that, in refusing to waive the addition to tax, respondent has exercised this discretion "arbitrarily, capriciously, or without sound basis in fact." Mailman v. Commissioner, 91 T.C. at 1084; see Capitol Federal Savings & Loan v. Commissioner, 96 T.C. 204, 213, 223 (1991). *823 The most important factor in determining reasonable cause and good faith under section 6661(c) is "the extent of the taxpayer's effort to assess [his] proper tax liability under the law." Mailman v. Commissioner, 91 T.C. at 1084; sec. 1.6661-6(b), Income Tax Regs. The regulation provides the following examples of circumstances that may indicate reasonable cause and good faith: (1) Reliance on a proposed regulation; (2) an honest mistake of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer; or (3) a computational or transcriptional error. Sec. 1.6661-6(b), Income Tax Regs.
Petitioners' reliance on an attorney or accountant in the preparation of their tax return or general advice about the tax treatment of an item does not necessarily constitute a showing of reasonable cause and good faith. Sec. 1.6661-6(b), Income Tax Regs. Reliance on the advice of an attorney or accountant constitutes a showing of reasonable cause and good faith under section 6661(c) only if, "under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." Sec. 1.6661-6(b), Income Tax Regs.
First, *824 we address the current deduction of the payments to Pre-Paid. In deciding whether or not respondent used her discretion arbitrarily, capriciously, or without a sound basis in fact, we examine the facts in the instant case. On the one hand, Fisher was a cardiovascular surgeon and petitioner wife was a secretary -- neither of them was a tax professional. Petitioners relied on their attorney and their accountant. Petitioners' relationships with their attorney were long-standing and extensive. On the other hand, petitioners had an extensive background in investing. Table 1, supra, presents a clue as to the variety and magnitude of petitioners' investment activities. Petitioners owned several rental houses and an apartment building, and invested in an auto parts business. Petitioners invested in the stock of Pre-Paid twice, and entered into several business deals with Pre-Paid, purchasing various equipment (computer, aircraft, cars) and leasing it to Pre-Paid. In 1990 Jaques' share holdings were the second largest in Pre-Paid. During 1983 and 1984 Jaques was the general counsel to Pre-Paid and was a member of the board of directors of Pre-Paid. Petitioners' accountant, Thomas *825 of Fentem CPAs, was recommended by Jaques and worked closely with Jaques in preparing petitioners' tax returns. Jaques is the one who told Fisher that Fentem CPAs would be willing to offer an opinion letter that attested to the current deductibility of the payments. Fisher testified that Thomas prepared his tax return, then Jaques reviewed the tax return, and then Jaques and Thomas reviewed the tax return with Fisher. Fentem Management was the management company that managed and oversaw the administration, reporting, and distribution of the claims in the reinsurance program. Clearly, Jaques and Thomas were not in a position to offer independent, unbiased tax advice about Pre-Paid's plan to petitioners. As general counsel to Pre-Paid and a member of Pre-Paid's board of directors, Jaques had fiduciary obligations to Pre-Paid that were inconsistent with his obligations to petitioners. Whatever may have been the appropriateness of Jaques' other investment advice to petitioners, Jaques' advice to petitioners about Pre-Paid's reinsurance arrangement had to be clouded by his obligations to Pre-Paid. Thomas was not independent of Jaques and Pre-Paid. Fisher's obvious intelligence *826 and extensive investment experience should have caused him to realize that he could not insulate himself from tax harm by relying on Jaques and Fentem with regard to their tax advice, which led to the erroneous Pre-Paid deductions on petitioners' tax returns. We view petitioners in the instant case as more experienced and sophisticated, and confronted with a more obvious conflict of interest on the part of their advisors, than were the taxpayers in Vorsheck v. Commissioner, 933 F.2d 757, 758-759 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court, and Heasley v. Commissioner, 902 F.2d 380, 384-385 (5th Cir. 1990), revg. T.C. Memo. 1988-408. We conclude that respondent did not exercise her discretion arbitrarily, capriciously, or without sound basis in fact. Accordingly, we conclude that respondent did not abuse her discretion as to the Pre-Paid adjustments. Second, we consider the computer business income, corporate dividends, partnership income, and interest expense that were incorrectly reported on petitioners' tax returns for 1983 and 1984. Although petitioners *827 retained a bookkeeper to maintain their financial affairs, this is not enough to persuade us that respondent abused her discretion in failing to waive the section 6661 additions to tax. We hold for respondent on this issue. IV. Constitutionality of 25-percent Rate
Petitioners argue that the application to them of the 25-percent rate for the section 6661 addition to tax is retroactive and violates their constitutional rights to due process and equal protection. Respondent contends that the retroactive application of the 25-percent rate does not violate petitioners' constitutional rights. We agree with respondent. The 25-percent rate under section 6661 applies in the instant case even though the rate was only 10 percent under the law as in effect when petitioners filed their tax returns for the years in issue. Pallottini v. Commissioner, 90 T.C. 498 (1988). This application does not violate taxpayers' constitutional due process and equal protection rights. Licari v. Commissioner, 946 F.2d 690 (9th Cir. 1991), affg. T.C. Memo. 1990-4; Estate of McClanahan v. Commissioner, 95 T.C. 98, 105 (1990). *828 We hold for respondent on this issue. * * * The instant case was tried after the trial in Krizer v. Commissioner, T.C. Memo. 1991-638, and involves the same Pre-Paid arrangement as in Krizer. The transcript of Jaques' testimony in Krizer was stipulated into evidence in the instant case. After the opinion was issued in Krizer, holding for respondent, the parties in the instant case filed supplemental briefs. We have examined these briefs. Although we agree that petitioners' presentation in the instant case appears to be more complete, nothing in that presentation leads us to a different result on the Pre-Paid issue, than the result we reached in Krizer. To take account of respondent's concession (supra note 2) and our holding for petitioners as to disclosure of the depreciation adjustments, Decision will be entered under Rule 155. Footnotes
1. Unless indicated otherwise, all section and subchapter references are to sections and subchapters of the Internal Revenue Code of 1954 as in effect for the years in issue.↩
2. One adjustment shifts an $ 11,335 itemized deduction from 1984 to 1983 (see infra table 2); respondent concedes that the sec. 6661 addition does not apply to that portion of the 1984 underpayment which is attributable to this item. Also respondent concedes that the deductions taken for payments to Pre-Paid Services, Inc., did not involve a tax shelter item as defined in sec. 6661(b)(2)(C)↩.
1. As a result of deductions, petitioners' claimed net losses on these three items aggregate about $ 650,000 for 1983 and $ 870,000 for 1984.↩
3. As can be seen from table 2, respondent's adjustments include three categories of deductions for amounts paid to Pre-Paid: Ceding commissions, legal and professional fees, and replacement commissions. The parties refer to the payments to Pre-Paid variously as "cash payments", "payments", "ceding commissions", "commissions", and "deductions relating to Pre-Paid". The entire amount of the addition to tax is in dispute and it appears that all three categories of deductions relating to Pre-Paid are involved in the parties' arguments, even though at times reference is made only to the "ceding commissions". We will consider the three categories of payments to Pre-Paid together, and we will use the term "payments" in referring to them.↩
4. The parties have stipulated that "Petitioners" entered into the contract and thereby secured the benefits and burdens thereof. However, the stipulated contract involves Fisher and does not involve petitioner wife. We have chosen to follow the text of the stipulated contract rather than the text of the stipulation. Rule 91(e). Unless indicated otherwise, all Rules references are to the Tax Court Rules of Practice and Procedure.↩
5. As in note 4, supra↩, the parties' stipulation is as to "Petitioners", but the stipulated exhibit involves Fisher and does not involve petitioner wife. We follow the exhibit rather than the stipulation.
6. The parties have stipulated that "Petitioners" entered into the 1984 agreements. The record does not include similar evidence (see supra↩ notes 4 and 5) contradicting the stipulation. Under these circumstances, we follow the stipulation.
7. Our finding is the amount shown on the tax return in evidence. The notice of deficiency shows "Tax on the original return" as $ 12,554.76. The parties have not sought to explain the $ 880.76 difference.↩
8. Our finding is the amount shown on the tax return in evidence. The notice of deficiency shows "Tax on the original return" as $ 99,146.20. The parties have not sought to explain the $ 19.80 difference.↩
9. SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. * * * (b) Definition and Special Rule. -- * * * (2) Understatement. -- * * * (B) Reduction for understatement due to position of taxpayer or disclosed item. -- The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to -- (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.
[Sec. 6661 was repealed by sec. 7721(c)(2) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399. The substance of former sec. 6661(b)(2)(B)↩ now appears as sec. 6662(d)(2)(B).]
10. On brief, petitioners do not argue that they had substantial authority for their treatment of any of the other items as to which adjustments were made; we treat this as, in effect, a concession by petitioners that they do not have substantial authority for those items, within the meaning of sec. 6661(b)(2)(B)(i). See subpars. (4) and (5) of Rule 151(e); Sundstrand Corp. v. Commissioner, 96 T.C. 226, 344 (1991); Money v. Commissioner, 89 T.C. 46, 48↩ (1987).
11. Pars. (a) and (b) of sec. 1.6661-3, Income Tax Regs., provide, in pertinent part, as follows: § 1.6661-3. Substantial authority. -- (a) General rule. -- (1) * * * (2) Substantial authority standard. The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter than a reasonable basis standard (the standard which, in general, will prevent imposition of the penalty under section 6653(a), relating to negligence or intentional disregard of rules and regulations). Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard. (b) Determination of whether substantial authority is present. -- (1) Evaluation of authorities. There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists and the weight of those authorities is determined in light of the pertinent facts and circumstances in the manner prescribed in paragraph (b)(3) of this section. There may be substantial authority for more than one position with respect to the same item. The taxpayer's belief that the authorities with respect to the tax treatment of an item constitute substantial authority is not taken into account in determining whether there is substantial authority. * * * (3) Nature of analysis. Except as otherwise provided in this section, the weight of the authorities for the tax treatment of an item is determined by the same analysis that a court would be expected to follow in evaluating the tax treatment of the item. Thus, the weight of authorities depends on their persuasiveness and relevance as well as their source. For example, a case or revenue ruling having some facts in common with the tax treatment at issue would not be considered particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. Similarly, an authority that merely states a conclusion ordinarily would be given less weight than an authority that reaches its conclusion by cogently relating the applicable law to pertinent facts. There may be substantial authority for the tax treatment of an item despite the absence of certain types of authority. Thus, a taxpayer may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision. (4) Special rules -- * * * (iii) When substantial authority determined. For purposes of section 6661↩, there is substantial authority for the tax treatment of an item if there is substantial authority at the time the return containing the item is filed or there was substantial authority on the last day of the taxable year to which the return relates.
12. Sec. 831(b)(2) provides an alternative to the general rule of sec. 831(a), which "shall apply to every insurance company other than life" if certain requirements are met. Secs. 831 and 832 do not define "insurance company". Sec. 1.831-3(a), Income Tax Regs., provides that "As used in this section and section 832 and the regulations thereunder, the term 'insurance companies' means only those companies which qualify as insurance companies under the definition provided by paragraph (b) of § 1.801-1 and which are subject to the tax imposed by section 831." The regulation referred to (sec. 1.801-1) applies only to taxable years beginning before Jan. 1, 1955, and so does not apply to the instant case. Sec. 1.801-2, Income Tax Regs.↩
13. Tatge, "Tax Planning Opportunities Through Reinsurance Still Available Despite TEFRA", 59 J. Taxn. 260↩ (Oct. 1983); Kafka, "The Deductibility of Indemnity Reinsurance Ceding Commissions", 38 J. Am. Socy. of CLU 82 (Mar. 1984).
14. On brief, petitioners do not argue that they adequately disclosed their position regarding the computer business income; we treat this as, in effect, a concession by petitioners that they did not adequately disclose as to this item, within the meaning of sec. 6661(b)(2)(B)(ii). See subpars. (4) and (5) of Rule 151(e); Sundstrand Corp. v. Commissioner, 96 T.C. at 344; Money v. Commissioner, 89 T.C. at 48↩.
15. Rev. Proc. 84-19, 1984-1 C.B. 433-434, provides, in pertinent part, as follows, with regard to tax returns filed in 1984: SEC. 2., BACKGROUND * * * .03 In general, rules providing guidance on the adequacy of disclosure for purposes of reducing an understatement under section 6661 of the Code will be set forth in regulations. The Commissioner has determined that in certain circumstances described in section 3 of this revenue procedure, disclosure of an item on the return with no further statement is adequate disclosure for purposes of section 6661, provided the taxpayer furnishes all required information in accordance with the applicable forms and instructions. This revenue procedure provides guidelines as to when such disclosure is adequate. SEC. 3. PROCEDURE * * * (2) Trade or Business Expenses: * * * (f) Repair as Opposed to Capital Expenditure: The amount of repairs stated.
[Rev. Proc. 85-19, 1985-1 C.B. 520, provides the identical instructions with regard to tax returns filed in 1985, except that the quoted language appears in secs. 2.04 and 3(b)(6) of Rev. Proc. 85-19↩.]
16. Sec. 6661 provides, in pertinent part, as follows: SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. * * * (c) Authority to Waive. -- The Secretary may waive all or any part of the addition to tax provided by this section on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith.
[Sec. 6661↩ was repealed by sec. 7721(c)(2) of OBRA 89, Pub. L. 101-239, 103 Stat. 2106, 2399. The waiver provision has been replaced by a reasonable cause exception (which now appears as sec. 6664(c)(1)) based on the same circumstances which, under pre-OBRA 89 law, could have been the basis of a waiver. The new provision applies to tax returns the due date of which is after Dec. 31, 1989, and so does not apply to the instant case.]