Gary **ANTONIDES**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

David **SMITH**; Mary Diane **Smith**, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

Richard **HERDENDORF**; Phyllis **Herdendorf**, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

Nos. **89–2632, 89–2634** and **89–2699.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1989.

Decided Jan. 11, 1990.

John J. Mullenholz (Thomas J. O'Rourke, Neill, Mullenholz & Shaw, on brief) for petitioners.

Thomas Richard Lamons (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, and Gilbert S. Rothenberg, Tax Div., Dept. of Justice, on brief) for respondent.

Before CHAPMAN and WILKINS, Circuit Judges, and WINTER, Senior Circuit Judge.

WILKINS, Circuit Judge.

Gary Antonides, David and Mary Diane Smith, and Richard and Phyllis Herdendorf (the taxpayers) appeal the decision of the Tax Court that their yacht chartering venture was an activity not engaged in for profit. I.R.C. § 183 (West Supp.1989). Antonides also appeals the decision of the Tax Court that he is liable for an addition to tax because of a substantial understatement of tax liability. I.R.C. § 6661 (West 1989). We affirm.

I.

David Smith[1], Antonides, and the Herdendorfs are avid sailors, all of them either owning or having access to sailboats. In 1979 Smith became interested in acquiring a sailboat ·for use in the charter business. He studied boating and investment periodicals and determined that sailboats had been appreciating in value significantly since the mid–1970's. Although his research revealed that a charter business would not immediately realize a positive cash flow, he concluded that in the early years he could concentrate on building a client base and that favorable tax laws and the expected appreciation in the value of the boat would offset early losses.

In 1981 Smith approached Antonides, a Naval Academy classmate, and the Herdendorfs, Smith's sister and brother-in-law, and proposed that they purchase a boat for use in the charter business. Smith, Antonides, and the Herdendorfs formed a partnership in which Smith and Antonides each held a one-third interest and the Herdendorfs jointly held a one-third interest.[2] The partnership purchased a boat through a sale-leaseback agreement from Nautilus Yacht Sales (Nautilus) for $94,790. The sale-leaseback agreement provided that the boat was leased to Nautilus for three years for a total of $18,958, with this amount treated as a down payment on the boat. The remainder of the purchase price was financed with a full recourse loan at 17 percent interest over a period of five years. Nautilus provided financing, insurance, charter management, and documentation services. Nautilus also provided advertising that the partners hoped would assist in building a client base.

The partnership was capitalized with an initial contribution of $414.33 from each partner. The partners agreed to share losses and profits equally. Each partner was entitled to personal use of the boat for seven days each year. The partners inspected the boat regularly and made minor repairs in an effort to save money. After

---

1. Mary Diane Smith, David Smith's wife, is a party because she filed a joint tax return with David Smith for 1982.

2. The Articles of Partnership provided that the Herdendorfs were to be treated as one partner.

one year, Smith evaluated the performance of the business and concluded that, if necessary, they could sell the boat at the end of the three-year lease term and break even.

In 1983 the partners refinanced the boat to obtain a more favorable interest rate. An appraisal of the boat reported that its value had declined to $78,500. On December 31, 1983, Antonides sold his partnership interest to the other partners. He reported a gain on the sale and recaptured unused investment tax credit.

The tax return of the partnership for the 1982 tax year showed income of $6,320, interest expense of $12,801, operating expenses of $2,580 and depreciation of $20,854 for a total tax loss of $29,915.[3] The Herdendorfs reported all of the income and one-third of the partnership's deductions. Antonides and Smith each reported one-third of the partnership's deductions. The Commissioner of Internal Revenue determined: (1) that the partners should share the partnership income equally; (2) that the operating expense and depreciation deductions of the partnership were disallowed because the charter business was not an activity engaged in for profit; (3) that there was a deficiency in the taxpayers' income tax for 1982; (4) that Antonides was liable for an addition to tax for negligence, I.R.C. § 6653(a) (West 1989); and (5) that Antonides and the Smiths were each liable for an addition to tax because of a substantial understatement of tax, I.R.C. § 6661. The taxpayers petitioned the Tax Court for a redetermination of the deficiency. The Tax Court sustained the Commissioner's determinations disallowing the deductions from the partnership and imposing the substantial understatement penalty on Antonides, determined that Antonides was not liable for the negligence penalty, and determined that the Smiths had not made a substantial understatement of tax. *See Antonides v. Commissioner*, 91 T.C. 686 (1988).

## II.

Section 183(c) of the Internal Revenue Code defines an "activity not engaged in for profit" as an activity other than one with respect to which deductions are allowable under section 162 or sections 212(1) or (2).[4] I.R.C. § 183(c). If the activity is not engaged in for profit, section 183(a) disallows deductions attributable to the activity except for those deductions specifically allowed under section 183(b). I.R.C. § 183(a). Section 183(b)(1) allows only those deductions that would be allowable without regard to whether the activity is engaged in for profit. I.R.C. § 183(b)(1). Section 183(b)(2) allows all other deductions that would be allowable if the activity were engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b)(1). I.R.C. § 183(b)(2). The Tax Court determined that because the partnership was not engaged in the charter activity for profit, section 183 disallowed the deductions from the activity except for the interest expense, which during 1982 was a deduction allowable without regard to whether the activity was engaged in for profit. Because the interest expense exceeded the gross income from the charter activity, no other deductions were allowed under section 183(b)(2).

Section 6661 imposes on the taxpayer a penalty of twenty-five percent of the amount of any underpayment of tax attributable to a substantial understatement in the amount of income tax liability. I.R.C. § 6661(a). An understatement is the excess of the amount of tax required to be shown on a return over the amount of the

---

**3.** Although only the 1982 tax year is at issue, the government offered evidence to show that the total deductions for the tax years 1981–1985 were $162,420, total gross receipts were $18,959, and the resulting total tax loss was $143,462.

**4.** Section 162 allows a deduction for "ordinary and necessary expenses paid or incurred ... in carrying on any trade or business." I.R.C. § 162(a) (West Supp.1989). Section 212(1) allows a deduction for expenses incurred "for the production or collection of income," I.R.C. § 212(1) (West 1988), and section 212(2) allows a deduction for expenses incurred "for the management, conservation, or maintenance of property held for the production of income." I.R.C. § 212(2) (West 1988).

tax which is actually shown on the return. I.R.C. § 6661(b)(2)(A). To be substantial, the amount of the understatement must exceed the greater of ten percent of the tax required to be shown on the return or $5,000. I.R.C. § 6661(b)(1)(A). The amount of the understatement is reduced, however, by the portion of the understatement that is attributable to the taxpayer's position with respect to an item if there is substantial authority to support the taxpayer's position or if the relevant facts respecting the tax treatment of the item are adequately disclosed in the return.[5] I.R.C. § 6661(b)(2)(B). Authorities for a reporting position include the Internal Revenue Code, other statutes, regulations, judicial decisions, revenue rulings and procedures, tax treaties, and legislative history. Treas.Reg. § 1.6661–3(b)(2) (1985). There is substantial authority "only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary positions." Treas.Reg. § 1.6661–3(b)(1). The Tax Court found that there was not substantial authority for the position that the losses arising from the partnership activity were deductible. The partners did not contend that they had made an adequate disclosure of the relevant facts. Therefore, the Tax Court held that the penalty was applicable.[6]

### III.

■ We review the decision of the Tax Court under the clearly erroneous standard unless "there has been an erroneous interpretation of the applicable legal standard." *Faulconer v. Commissioner*, 748 F.2d 890, 895 (4th Cir.1984). The taxpayers contend that the Tax Court applied the wrong legal standard by ruling that an activity is not engaged in for profit for purposes of section 183 unless there is a predominant purpose and intention to make a profit. In *Faulconer* we specifically declined to decide whether section 183 requires a pri-

mary or predominant purpose of making a profit. *Id.* at 895–96 n. 10. We did note, however, that the profit motive required by section 183 was the same as the profit motive required by sections 162 and 212. *Id.* at 893. The Supreme Court has held that for deductions to be allowable under section 162, the primary purpose for engaging in the activity must be for profit. *Commissioner v. Groetzinger*, 480 U.S. 23, 35, 107 S.Ct. 980, 987, 94 L.Ed.2d 25 (1987); *see Thomas v. Commissioner*, 792 F.2d 1256, 1259 (4th Cir.1986) ("The major premise for the allowance of [section 162] deductions is that they arise out of a venture whose primary objective is to make a profit."). Additionally, other circuits have held that section 212 also requires a predominant purpose and intention to make a profit. *See Simon v. Commissioner*, 830 F.2d 499, 500–01 (3d Cir.1987) (deductions claimed under section 212 must meet the requirements of section 162 except that the taxpayers need not be in a trade or business); *Bolaris v. Commissioner*, 776 F.2d 1428, 1432 (9th Cir.1985); *Snyder v. United States*, 674 F.2d 1359, 1364 (10th Cir. 1982). Here, the Tax Court required the taxpayers "to show that they engaged in their boat chartering activity with the objective of making an economic profit." Because this was not an erroneous interpretation of the applicable legal standard under section 183, we apply the clearly erroneous standard of review to the decision of the Tax Court.

■ The Tax Court stated that the determination of whether an activity is engaged in for profit must involve consideration of all relevant facts and circumstances. The court noted that the regulations under section 183 provide a nonexclusive list of factors that should be considered. *See* Treas.Reg. § 1.183-2 (1972). It found that, based on the cash flow analysis prepared by Nautilus and adjusted by Smith, the taxpayers could not have anticipated mak-

---

**5.** A special rule applies to "tax shelter" items. *See* I.R.C. § 6661(b)(2)(C). Here, the Commissioner does not contend that the yacht chartering activity was a tax shelter within the meaning of section 6661(b)(2)(C)(ii).

**6.** The penalty is only applicable to Antonides. The Commissioner did not assess the penalty against the Herdendorfs, and the amount of the understatement by the Smiths was not substantial because it was less than $5,000.

**660**

ing a profit on their operations within the foreseeable future, if ever. The court noted that even if the taxpayers reasonably believed that the boat would appreciate in value, they could not have expected to do much more than break even. The court concluded that while the taxpayers would have liked to make a profit, it was not their actual motivation for acquiring the boat. Although the Tax Court speculated that the taxpayers' likely motivation was to defray the cost of owning a boat for personal enjoyment, we need not determine whether this was the taxpayers' true purpose. It is sufficient for purposes of section 183 that the Tax Court determined that the activity was not engaged in for profit.

The taxpayers contend that the Tax Court erred by failing to discuss any of the factors listed in the section 183 regulations. Although the Tax Court did not list and address each of the factors seriatim, it is apparent from its opinion that it did consider the factors and on the basis of all of the facts and circumstances, determined that the taxpayers were not engaged in the yacht chartering activity for profit. Based on our review of the record, we cannot say that this finding was clearly erroneous.

### IV.

The Tax Court also determined that the tax treatment of the deductions arising from the partnership was not supported by substantial authority. The court correctly reasoned that the cases cited by the taxpayers in which deductions arising from a yacht chartering activity had been allowed were factually distinguishable.[7] Those cases either did not involve fixed lease payments and, therefore, the taxpayers had the potential of making a profit, or the amount of the lease payments was sufficient to meet expenses if the value of the yacht remained constant. Thus, the court held that these cases did not constitute substantial authority to support the treatment of the deductions by the taxpayers. The court also determined that there was

no other authority that could constitute substantial authority. Antonides contends that the issue of whether section 183 disallows the deductions is a factual one and that an analysis of the factors contained in the regulations under section 183 provides support for the tax treatment of the partnership deductions. However, the Tax Court found that the taxpayers' position that the expenses of the partnership were allowable deductions was not supported by section 183, a finding we cannot say was clearly erroneous.

AFFIRMED.

---

**7.** *See Slawek v. Commissioner,* 54 T.C.M. (CCH) 364 (1987); *Zwicky v. Commissioner,* 48 T.C.M. (CCH) 1025 (1984); *Dickson v. Commissioner,* 47 T.C.M. (CCH) 509 (1983); *McLarney v. Commissioner,* 44 T.C.M. (CCH) 752 (1982).