CLINTON AND HARRIET M. MORRING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MORRING v. COMMISSIONER
Docket No. 24066-93.
United States Tax Court
T.C. Memo 1995-403; 1995 Tax Ct. Memo LEXIS 401; 70 T.C.M. (CCH) 470; August 21, 1995, Filed *401 Decision will be entered for respondent. Lawrence E. Bolind, Jr., for petitioners. Julia L. Wahl, for respondent. WOLFE, Special Trial Judge WOLFE
MEMORANDUM OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6662(a)
1989
$ 1,530
$ 306
1990
$ 1,013
$ 203
The issues for decision concerning petitioners' Federal income taxes are: (1) Whether petitioners' operation of an outdoor recreation center, Appalachian Trails, was an activity not engaged in for profit within the meaning of section 183; and (2) whether petitioners are liable for additions to tax under section 6662(a) for negligence *402 or disregard of rules or regulations for the taxable years 1989 and 1990. Some of the facts have been stipulated and are so found. Petitioners resided in New Alexandria, Pennsylvania, when their petition was filed. Clinton Morring (petitioner) has participated in and enjoyed scouting since 1951 when he was 11 years of age. Petitioner served as scout master of a Boy Scout troop from 1965 through 1986. Serving as scout master enabled petitioner to fulfill his desire to contribute something back to his community. In 1971 petitioner established Appalachian Trails. Located on petitioner's private property, Appalachian Trails served as an outdoor recreation center providing guidance and outfitting for backpacking, camping, and similar outdoor activities for scout, church, and family groups. Petitioner developed campsites, an archery range, trails, and parking areas on his property. Much of the equipment that petitioner purchased for the scout troop was used at Appalachian Trails. New Alexandria and the surrounding area have much to offer people interested in outdoor recreational activities. The Loyalhanna Federal Flood Control Lands (Loyalhanna) and the Keystone State Park are located *403 near Appalachian Trails. The Conemaugh River Lake (Conemaugh) is within 5 miles of Appalachian Trails. Conemaugh and Loyalhanna, both under the jurisdiction of the U.S. Army Corps of Engineers, offer free access for walking or hiking. Loyalhanna also has a camping site, the Bush Recreation Area, open to the public at no charge, and canoeing was allowed at Conemaugh. The Keystone State Park is available for camping at a nominal charge. During its initial years petitioner operated Appalachian Trails out of the basement of his mother's house, where he also resided. Over time petitioner accumulated 26 canoes, a canoe trailer, and a truck. Petitioner also acquired equipment to sell at retail. Because the basement of petitioner's home proved inadequate for his needs, petitioner decided to erect a building on the property. Starting in 1974, petitioner personally designed and constructed the building over a 10-year period. Petitioner and his wife moved into the building and lived there after their marriage in 1986. The building still was petitioners' residence during taxable years 1989 and 1990. Petitioner maintained somewhat informal records of expenditures and receipts associated with *404 Appalachian Trails. A log book was used to keep track of equipment expenditures, such as gas and repair costs for the truck, tractor, mower, and power saws. No formal ledger was maintained for Appalachian Trails as an entity, but petitioner retained receipts and recorded expenditures informally. Petitioner did not engage any financial or business advisers with respect to operating Appalachian Trails. Instead, petitioner relied upon his experience in outdoor recreation activities and his extensive library of books on canoeing, backpacking, archery, nature, outdoor survival, first aid, and business fundamentals. During 1989 and 1990, and for more than 20 years prior thereto, petitioner was employed full-time at PPG Industries (PPG). Petitioner worked a rotating shift at PPG, Monday through Friday, which entailed hours that ranged from 8:00 a.m. to 4:00 p.m. 1 week, 4:00 p.m. to 12:00 p.m. the next week, and 12:00 p.m. to 8:00 a.m. the following week. Occasionally petitioner worked weekend hours. During 1989 and 1990, petitioner Harriet Morring worked out of petitioners' residence making telephone sales of Nutri-metrics products. Petitioners maintained one telephone number for both *405 themselves and Appalachian Trails during the years at issue. The phone number was listed under the name Appalachian Trails and petitioners used call waiting. Petitioners had one bank account during 1989 and 1990. The account was kept under the name of Appalachian Trails, and petitioners wrote all of their checks out of that bank account. The promotional efforts for Appalachian Trails varied from year to year, and petitioner deliberately curtailed such efforts so as to avoid time conflicts with his job at PPG. Appalachian Trails was promoted as specializing in scout, church, and family groups, a segment of the market which petitioner described as its niche. Petitioner listed Appalachian Trails in the Yellow Pages and erected road signs. A paragraph describing Appalachian Trails was placed in a regional recreation magazine in 1989 for $ 92. An in-house, typewritten pamphlet was distributed to local churches, scouting groups, and acquaintances. Interested parties were given an open house tour and shown a slide show regarding Appalachian Trails. For a time, many of these promotional efforts were initiated by John Morrell, a former assistant leader of the scouts while petitioner was scout *406 leader. A retiree at the time, Mr. Morrell was not remunerated, but contributed his efforts to Appalachian Trails from the fall of 1987 to the spring of 1989. For taxable years 1971 through 1990, petitioners never reported a net profit for Appalachian Trails on their Federal income tax returns, or the attached Schedules C, profit or loss from business. The gross income, expenses, and losses attributed to Appalachian Trails and reported by petitioners on their Schedules C for 1983 through 1992 is summarized as follows: Gross
Year
Income
Expenses
Losses
1983
$  326
$  10,456
$ ( 10,130)
1984
258
9,979
(  9,721)
1985
96
9,040
(  8,944)
1986
129
11,131
( 11,002)
1987
147
27,948
( 27,801)
1988
-0-
20,021
( 20,021)
1989
-0-
10,172
( 10,172)
1990
43
6,766
(  6,723)
1991
221
5,852
(  5,631)
1992
645
5,834
(  5,189)
Total
$ 1,865
$ 117,199
$ (115,334)
Petitioners intended to devote themselves full-time to Appalachian Trails if and when it ever became profitable. OPINION The primary issue to be decided is whether petitioner's involvement with Appalachian Trails constituted an activity engaged in for profit. Section 183(a) provides that if *407 an activity engaged in by an individual is not engaged in for profit, no deduction attributable to such activity shall be allowed, except as provided in section 183(b). [2] An "activity not engaged in for profit" means any activity other than one for which deductions are allowable under section 162 or under paragraph (1) or (2) of section 212. Sec. 183(c). Section 162 allows a deduction for all the ordinary and necessary expenses paid or incurred in carrying on a business. Section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income. The profit standards applicable to section 212 are the same as those used in section 162. See Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988). *408 For a taxpayer to deduct expenses of an activity pursuant to section 162, he must show that he engaged in the activity with an actual and honest objective of making a profit. Sec. 183; Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Fuchs v. Commissioner, 83 T.C. 79, 97-98 (1984); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Beck v. Commissioner, 85 T.C. 557, 569 (1985). "Profit" in this context means economic profit, independent of tax savings. Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), *409 affd. without published opinion 647 F.2d 170 (9th Cir. 1981). The burden of proving such objective is on petitioner. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Greater weight is given to objective facts than to a taxpayer's statement of intent. Beck v. Commissioner, supra at 570; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183 -2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., provides a non- exclusive list of factors that should be considered in determining whether an activity is engaged in with the requisite profit objective. The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used by the taxpayer may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect *410 to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. (1) Manner in which the taxpayer carries on the activity. Petitioner maintained records of receipts and expenses associated with Appalachian Trails. A log book was kept with respect to expenses arising from the maintenance and use of physical equipment. The record contains no explanation or suggestion as to how petitioners used the information in their records to help Appalachian Trails make a profit. The journal or log book format of the records makes them essentially useless for any purpose except verification of transactions. Appalachian Trails was listed in the Yellow Pages; a promotional advertisement was placed in a regional outdoor recreation magazine; and some signs were placed along the road. A pamphlet describing Appalachian Trails was distributed to local churches and *411 scout groups. Interested parties were given an open house tour of the grounds and a slide show presentation regarding Appalachian Trails. On the other hand, petitioner never developed a written business plan or sought expert advice regarding the business of running an outdoor recreational facility. Petitioners maintained a single bank account and a single telephone line for both personal use and Appalachian Trails purposes. Petitioner Harriet Morring used the same phone line to sell Nutri-metrics products. Petitioner's full-time job at PPG and its rotating shifts severely limited the amount of time he could contribute to Appalachian Trails and any patrons. Promotional efforts were curtailed so as to avoid conflicts with work at PPG. Petitioner explained his view of the difficulty of trying to run a group tour business while fully employed as follows: "What do you do, tell your employer, hey, my business comes first?" Petitioner considered that he was "forced in to a situation where I either quit my job to run the business and not assume responsibility for my family" or retain his full-time employment with PPG in order to satisfy his obligations to his family. As a result, he "went *412 easy with the promotion." When asked to discuss Appalachian Trails' promotional pamphlets, petitioner testified that he did not know how they related to a profit motive. Petitioner also testified that he had taken church, scouting, or family groups out for almost no charge. Plainly, the business was not run in a businesslike manner since petitioner restricted promotion to avoid conflict with his full-time employment and provided service to many groups for minimal charges. (2) The expertise of the taxpayer or his advisers. Petitioner had many years of experience in scouting and outdoor recreational activities. However, petitioner had no experience in the retail trade or in running an outdoor recreational center as a business for profit. Petitioner never consulted business or financial advisers or other persons experienced in the business aspects of outdoor recreational facilities. (3) Time and effort expended by the taxpayer in carrying on the activity. Petitioner designed and constructed the building which housed Appalachian Trails. The task took him 10 years. However, the same building also served as petitioners' personal residence after they were married in 1986, and petitioners *413 still lived in this building in 1989 and 1990. Petitioner cleared trails for hiking, developed campsites, an archery range, and parking areas on the local grounds. Petitioner's full-time job at PPG, the rotating shift arrangement of his employment, and the requirement that he sometimes work on weekends severely limited the amount of time he could devote to Appalachian Trails each week. The rotating shift and weekend work made it hard for petitioner to schedule touring groups or make specific arrangements to service customers. (4) Expectation that assets used in the activity may appreciate in value. Petitioners argue that the property on which the Appalachian Trails activity was conducted has appreciated in value and will continue to do so. An independent real estate appraiser valued petitioners' New Alexandria property at $ 107,000 in April of 1987. Because of the rural location of the property, the appraiser chose a market value even though reproduction cost of the newly completed building was higher. The record does not support the argument that the property is likely to increase in value. (5) The success of the taxpayer in carrying on other similar or dissimilar activities *414 . Petitioners have not previously engaged in running an outdoor recreational business or any other business. (6) The taxpayer's history of income or losses with respect to the activity, and (7) the amount of occasional profits, if any, which are earned. For the taxable years between 1971 and 1990, petitioners never reported a net profit for Appalachian Trails on their Federal income tax returns, Schedules C, profit or loss from business. Appalachian Trails generated substantial losses totaling $ 104,514 between 1983 and 1990. Appalachian Trails lost $ 10,172 in 1989 and $ 6,723 in 1990. These losses were used to offset petitioners' other taxable income. A record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention. Hendricks v. Commissioner, 32 F.3d 94, 99 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Golanty v. Commissioner, 72 T.C. at 426-427; Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). *415 Petitioners have reported losses for Appalachian Trails on their Federal income tax returns' Schedules C from 1983 through 1992, and never have reported a net-profit for Appalachian Trails since its inception in 1971. (8) The financial status of the taxpayer. For each of the taxable years 1989 and 1990 petitioners reported income from wages and other sources on their Federal income tax return in the amount of approximately $ 38,000. Their New Alexandria property had been independently valued at $ 107,000. Petitioners' other income was sufficient for them to obtain a tax benefit from the losses generated by Appalachian Trails. (9) The presence of elements of personal pleasure or recreation. Petitioner Clinton Morring has participated in scouting and enjoyed outdoor recreational activities since he was 11 years old in 1951. Over time petitioner has collected an extensive library of books on the subjects of camping, canoeing, archery, backpacking, outdoor survival, and first aid. Petitioner voluntarily served as scout master of an area Boy Scout troop from 1965 through 1986. Appalachian Trails existed for the latter 15 years while petitioner was scout master. Petitioner believes *416 in contributing back to his community, and scouting was a means for him to do that. After a careful consideration of the entire record and each of the factors listed in section 1.183-2(a), Income Tax Regs., we conclude that the operation of Appalachian Trails was not an activity in which petitioners engaged with an actual and honest objective of making a profit. Petitioners have not reported a profit for Appalachian Trails in the more than 20 years since its inception. From 1983 through 1990 petitioners claimed losses totaling $ 104,514. The activities of Appalachian Trails, scouting and outdoor recreation, have long been activities enjoyed by petitioner. Serving as scout master enabled petitioner to fulfill his sense of obligation to his community. Appalachian Trails was created during his tenure as scout master, and the Appalachian Trails property and equipment were available for use by petitioner's scout troop for 15 of the 20 years that petitioner served as scout master. Indeed, much of the equipment used at Appalachian Trails was initially purchased by petitioner for the scout troop. Petitioner targeted Appalachian Trails to scout, church, and family groups, and there were times *417 when petitioner charged such groups next to nothing. Petitioners did not operate Appalachian Trails in a businesslike way or in a manner indicative of an objective to make a profit. Expenses and receipts were documented, but nothing in the record indicates that petitioners used this information to improve the possibility of profitable operation of the center. Petitioner never established a business plan or sought out professional business advice. Petitioner's full-time employment commitments required that promotion and advertising, and the patronage it might engender, be kept at a minimum. The building petitioner constructed for Appalachian Trails served as petitioners' personal residence. Petitioners maintained just a single bank account and phone line for both personal use and Appalachian Trails. While petitioners may have hoped that somehow, someday the activity might result in a profit, because of petitioner's full-time employment, he did not have the time even to try to operate Appalachian Trails profitably during the years in issue. Predictably, Appalachian Trails lost money during those years and every other year reflected in the record. The evidence in this case shows that *418 Appalachian Trails was established because of petitioner's enjoyment of scouting activities and his sense of community. The activity is commendable because of the social accomplishment. Petitioner's own testimony is that he derived personal pleasure from the outdoor activity and would have much preferred spending his days in such outdoor activity instead of in the factory work he was required to perform to support his family. Regardless of our sympathy for petitioner's predicament, the objective facts in the record demonstrate that during the years in issue petitioners did not operate Appalachian Trails with an actual and honest objective of making a profit. Beck v. Commissioner, 85 T.C. at 570. Petitioners have not satisfied their burden of proof. Accordingly, petitioners' activities associated with Appalachian Trails were not engaged in for profit within the meaning of section 183(c). The next issue is whether petitioners are liable for additions to tax under section 6662(a) for negligence or disregard of rules or regulations for the taxable years 1989 and 1990. Section 6662(a) and (b)(1) imposes a penalty on any portion of an underpayment that is *419 attributable to negligence or disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Petitioners have the burden of proof to show that the penalties should not be sustained by the Court. Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). Petitioners have neither offered evidence nor argued that they are not liable for such additions to tax. Consequently, petitioners have failed to carry their burden of proof and are liable for the additions to tax determined by respondent. See Bischoff v. Commissioner, T.C. Memo. 1995-34. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the case of an activity not engaged in for profit, sec. 183(b)(1) allows a deduction for expenses that are otherwise deductible without regard to whether the activity is engaged in for profit. Sec. 183(b)(2) allows a deduction for expenses that would be deductible only if the activity were engaged in for profit, but only to the extent the total gross income derived from the activity exceeds the deductions allowed by sec. 183(b)(1).↩