T.C. Summary Opinion 2001-184

UNITED STATES TAX COURT

HUGH T. BROWN, JR., AND KRISTI L. BROWN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 225-01S.                    Filed December 12, 2001.

Kelly Abreu, for petitioners.

James J. Posedel, for respondent.

WOLFE, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for the years in issue.  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined deficiencies of $2,509 and $2,085 in petitioners' Federal income taxes for 1996 and 1997, respectively. The issues for decision are: (1) Whether petitioners' gold mining activity was an activity engaged in for profit during 1996 and 1997 within the meaning of section 183, and (2) whether petitioners are entitled to deductions claimed on Schedules C, Profit or Loss From Business, for expenditures relating to their gold mining activity during 1996 and 1997.

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Redlands, California, when the petition was filed.

## Background

During the years in issue, Hugh T. Brown, Jr. (petitioner), worked as a civilian employee for the U.S. Army Corps of Engineers. His wife, petitioner Kristi L. Brown (Mrs. Brown), was not employed outside the home during this time and listed her occupation as "student" on joint Federal income tax returns for the years in issue. Petitioners' three children were, respectively, 16, 20, and 21 years of age at the time of trial (September 13, 2001).

Petitioner's education after high school consisted of 2 years of junior college courses. Petitioner served 4 years in the U.S. Army, and he was discharged in 1971. Between 1971 and

1987, petitioner worked as a field engineer for three different mining companies and frequently worked in underground tunnels and shafts. In 1988, petitioner started his own business, K.L. Brown Construction (Brown Construction), which provided general field engineering services to the mining industry, and also installed street utilities. During its 4-year existence, Brown Construction employed as many as 25 people at a time. Most of Brown Construction's clients were general prime contractors engaged in industrial mining of sand, gravel, and limestone through both above-ground surface mining and underground tunnel mining shafts.

In the early 1990s, petitioner became interested in gold mining. His previous mining experience did not involve gold. Through his research about the gold mining industry, petitioner learned that many gold mining operations were discontinued during World War II because of the war effort and remained abandoned after the war. Many of these mines were located in the deserts of southern California. Petitioner researched the production rates of some of the abandoned mines. He concluded that with the modern technology now available and the higher price of gold since removal of the artificial $32 per ounce price ceiling, by minimizing labor costs, a small enterprise might be able to operate some of the abandoned prewar mines profitably.

In 1994, petitioner, who lived with his family in West Virginia, accepted a job in California with his current employer, the U.S. Army Corps of Engineers. Petitioner accepted the job in part because of its proximity to many of the abandoned gold mines that he had learned about in his research. Petitioner hoped that his gold mining would eventually become so successful that he would not have to depend on an employer. He moved with his family to California in 1994, and he began mining for gold in 1995.

Petitioner devoted a substantial amount of time to his gold mining activity. Each week during the years in issue he worked four 10-hour days for the U.S. Army Corp of Engineers and devoted the remaining 3 days of the week to gold mining. Typically, on Thursday evening he would pack his equipment into his truck and travel that night to a mining site in the desert as much as 150 miles from his home. Petitioner then would spend the next 3 days mining for gold during the day and camping by himself at the mining site at night. He returned home on Sunday afternoons. Generally, no one from his family accompanied him on these trips.

Because his mining activity frequently led him to remote locations inaccessible by road, petitioner devised and constructed equipment small enough to permit him to transport it on foot for considerable distances. It was lightweight portable equipment that was a miniaturized version of more mainstream

equipment. The machinery was operated by a small motorcycle battery and could be collapsed and put into a backpack. It cost petitioner about $1,000 to purchase the parts and peripheral devices.

Petitioners' revenue from gold mining activity during the years in issue came from two sources: (1) The sale of the gold itself at various trade shows that petitioner attended once or twice each year, and (2) the fees petitioner charged to people who occasionally accompanied him on guided tours on his weekend mining expeditions. Each source produced about half the total revenue of the gold mining activity during the years in issue. In 1997, petitioner discontinued conducting guided tours of abandoned mines because of the inherent danger of gold mining and his potential liability if someone were to be injured. From that point on, in petitioner's words, he "zeroed in * * * on the mining and prospecting venture."

Petitioners filed joint Federal income tax returns for the years in issue. With each tax return, they attached a Schedule C for their gold mining activity, which they called Brown Enterprises. On the Schedules C, they reported the following:

| Income | 1996 | 1997 |
|---|---|---|
| Gross receipts | $350 | $525 |
| Less: cost of goods sold | 124 | 125 |
| Gross income | 226 | 400 |
| | | |
| Expenses | | |
| Advertising | $143 | $260 |
| Car and truck expenses | 3,574 | 5,011 |

| | | |
|---|---|---|
| Depreciation and sec. 179 | 3,901 | 2,422 |
| Interest | 317 | -0- |
| Legal and professional services | 500 | 100 |
| Office expense | 591 | 893 |
| Repairs and maintenance | 565 | 177 |
| Supplies | 1,940 | 1,230 |
| Travel | -0- | 220 |
| Meals and entertainment [50%] | 604 | 424 |
| Utilities | 788 | 1,024 |
| Other expenses[1] | 2,296 | 2,515 |
| Total expenses | 15,219 | [2]14,276 |
| Total net losses | (14,993) | ([2]13,876) |

[1]The "Other expenses" claimed for 1996 were:

| | |
|---|---|
| Cont. ed., books, and journals | $692 |
| Dues and subscriptions | 72 |
| Licenses and permits | 145 |
| Promotional items | 487 |
| Telephone | 737 |
| Uniforms and laundry | 163 |

The "Other expenses" claimed for 1997 were:

| | |
|---|---|
| Dues and publications | $285 |
| Miscellaneous | 50 |
| Parking | 22 |
| Postage, etc. | 445 |
| Printing | 66 |
| Tools | 560 |
| Sales and marketing | 665 |
| Promotional efforts | 422 |

[2]Petitioners actually reported total expenses of $14,296 and total net losses of $13,896, and the slight mathematical errors have been corrected.

Respondent concedes that petitioners incurred and paid all of the expenses listed on their Schedules C for Brown Enterprises during the years in issue.

Respondent disallowed the Schedule C losses on the ground that petitioners did not establish that their mining activity

constituted a bona fide business venture entered into for profit under section 183 and also because respondent did not concede that the undisputed expenditures were deductible business expenses.

## Discussion

Section 183(a) provides that if an activity engaged in by an individual is not engaged in for profit, no deduction attributable to such activity shall be allowed, except as provided in section 183(b).  In the case of an activity not engaged in for profit, section 183(b)(1) allows a deduction for expenses that are otherwise deductible without regard to whether the activity is engaged in for profit.  Section 183(b)(2) allows a deduction for expenses that would be deductible only if the activity were engaged in for profit, but only to the extent that the total gross income derived from the activity exceeds the deductions allowed by section 183(b)(1).

An "activity not engaged in for profit" is any activity for which deductions are not allowable under section 162 or under paragraph (1) or (2) of section 212.  Sec. 183(c).  The profit motive required by section 183 is the same as the profit motive required by sections 162 and 212.  See Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), affg. 91 T.C. 686 (1988); sec. 1.183-2(a), Income Tax Regs.

To deduct expenses of an activity under either section 162 or 212 (and thus avoid the limitations of section 183) a taxpayer must show that he or she engaged in or carried on the activity with an actual and honest objective of making a profit. Antonides v. Commissioner, supra; Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Fuchs v. Commissioner, 83 T.C. 79, 97-98 (1984); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Beck v. Commissioner, 85 T.C. 557, 569 (1985); sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has a bona fide profit objective is a question of fact to be resolved from all the surrounding facts and circumstances. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors which should normally be taken into account in determining whether the taxpayer has the requisite profit objective. The factors are: (1) The manner in which the

taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.

No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Keanini v. Commissioner, 94 T.C. 41, 47 (1990); sec. 1.183-2(b), Income Tax Regs. These factors are not all applicable or appropriate for every case. Abramson v. Commissioner, 86 T.C. 360, 371 (1986). In making our evaluation of the foregoing factors, we may consider evidence from years subsequent to the years in issue "to the extent it may create inferences regarding the existence of a profit motive in the earlier years." Hillman v. Commissioner, T.C. Memo. 1999-255 (citing Hoyle v. Commissioner, T.C. Memo. 1994-592 and Smith v. Commissioner, T.C. Memo. 1993-140).

Petitioner argues that he had an actual and honest objective to realize a profit from his mining activity during the years at issue, so his deductions with respect to his mining activity should not be limited by section 183. Respondent contends that an analysis of the relevant objective factors reveals that petitioner lacked a bona fide objective to make a profit.

Applying the Factors

1.  The Manner in Which Petitioner Conducted the Activity

The fact that a taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Generally, if the activity in question is carried on in a manner substantially similar to other activities of the same nature that are profitable, a profit motive may be indicated. See Sullivan v. Commissioner, T.C. Memo. 1998-367, affd. without published opinion 202 F.3d 264 (5th Cir. 1999); sec. 1.183-2(b)(1), Income Tax Regs. Gold mining and other similar speculative activities are different from most other business activities because they generally produce no significant income until a find is made, and then the income is earned in one lump sum. In Harrison v. Commissioner, T.C. Memo. 1996-509, we found that a taxpayer's contemporaneous handwritten lists of expenses were sufficient records for his gold mining and

treasure salvaging activity for purposes of section 183.[1]  There,
after noting that the taxpayer's record keeping "left something
to be desired", we said:

> The treasure hunting activity was different from
> petitioner's other businesses.  Different record
> keeping methods are therefore expected, and lack of
> record keeping is not determinative of intent.
> Treasure hunting is not the type of business where
> thorough records of gains and losses are necessary to a
> successful operation.  Cf. <u>Farrell v. Commissioner</u>,
> T.C. Memo. 1983-542.  This type of activity is likely
> to generate only expenditures with no income until a
> find is made at which time the income will come in one
> lump sum.  * * * [<u>Id.</u>]

Here, as in the <u>Harrison</u> case, petitioner kept no formal set
of books and records for his gold mining and prospecting
activity.  He did not maintain a general ledger or a spreadsheet.
No financial statements ever were prepared, except a balance
sheet prepared for petitioner's meeting with an IRS Appeals
officer.  Petitioner did have a business plan, but it was written
in December 2000, long after the years in issue.  Petitioner did
not maintain a separate bank account for his gold mining
activity.

Petitioner's record keeping consisted of the maintenance of
separate folders for his expenses.  As he incurred each expense,
he put the receipt in the appropriate folder.

---

[1]The Court treated the taxpayer's gold mining and treasure
salvaging operations as one activity for purposes of sec. 183.

The nonbusinesslike manner in which petitioner carried on his business would normally weigh against him in the determination of whether he had a bona fide profit objective. However, as in the Harrison case, because of the speculative nature of petitioner's business, we view the manner in which he carried on his business as a neutral factor.

2.  The Expertise of Petitioner or His Advisers

Preparation for the activity by extensive study of its accepted business, economic, and scientific practices or consultation with people who are expert in these practices may indicate a profit objective where the taxpayer carries on the activity in accordance with such practices.  Sec. 1.183-2(b)(2), Income Tax Regs.

Before he started his gold mining activity, petitioner had more than 20 years of work experience in the mining and quarrying industry.  Although petitioner had never mined specifically for gold, he had considerable knowledge of the mining process in general.  In the early 1990s, petitioner began reading prospecting books and became interested in gold mining. Petitioner researched the history of abandoned gold mines in California, analyzing their production rates at the time they were abandoned.  Petitioner sought advice from local dealers of gold mining equipment.  He also built his own lightweight

portable mining device that allowed him to travel long distances on foot to remote mining locations in the desert.

Petitioner relied on both his own expertise about mining in general and his research concerning gold mining specifically. Petitioner did not seek professional advice on the business and economic aspects of gold mining. We view his failure to seek such professional advice before commencing his gold mining activity as counterbalancing his significant experience in mining in general. We, therefore, conclude that this factor is neutral.

### 3. Petitioner's Time and Effort Devoted to the Activity

The fact that a taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects. See Daley v. Commissioner, T.C. Memo. 1996-259; sec. 1.183-2(b)(3), Income Tax Regs. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may be evidence that the activity was engaged in for profit. Sec. 1.183-2(b)(3), Income Tax Regs.

Both parties agree that petitioner devoted a significant amount of time and effort to his gold mining activity. During the years in issue, petitioner compressed a 40-hour workweek schedule into 4 days. Because of this arrangement of his employment, he was able to spend 3 consecutive days each week

mining for gold.  Almost every weekend during the years in issue, petitioner would leave his home on Thursday evening and drive up to 150 miles into the desert area of southern California to mine for gold.

This factor favors petitioners' position.

### 4. The Expectation That Assets Used in the Activity May Appreciate in Value

The term "profit" encompasses revenue from operations and appreciation in the value of assets, such as land.  Sec. 1.183-2(b)(4), Income Tax Regs.  Petitioner did not own any gold-bearing land or any mining claims, and his equipment could only depreciate.  Some equipment such as ropes and other climbing apparatus required frequent replacement for safety reasons.  In the absence of any property with substantial appreciation potential, we do not consider this factor significant.

### 5. Petitioner's Success in Other Entrepreneurial Activities

The fact that a taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that the taxpayer is engaged in the present activity for a profit, even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.

After being employed as a field engineer by several companies over a 17-year period, petitioner started his own business, Brown Construction, in 1988.  Brown Construction provided general field engineering services to the mining

industry and also installed street utilities.  In 1991, petitioner terminated Brown Construction and obtained employment as a field engineer at another company.  Petitioner attributed the short life of his business to the weak economy of the early 1990s.  In 1995, petitioner started a second activity, Brown Enterprises, the gold mining activity at issue.

Petitioner's unsuccessful business experience is not particularly helpful to us in determining whether petitioner engaged in gold mining for profit.  The two activities were fundamentally different.  Brown Construction provided consulting services to the mining industry and the installation of utilities in streets, employing at any given time up to 25 people.  Brown Enterprises, on the other hand, had no employees; its entire operation consisted of petitioner's prospecting for gold in the desert.  We conclude that this factor is neutral or slightly negative for petitioners, since petitioner's sole venture in business for himself, although very different from the gold mining activity, was not a success.

6.  <u>Petitioners' History of Income or Loss From the Activity</u>

A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit.  However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status, such continued losses,

if not explainable as due to customary business risks or reverses, may indicate that the activity is not being engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. Under section 1.183-2(b)(6), Income Tax Regs., there is less concern over losses in the initial stages of an activity. A greater concern arises when unexplained losses have continued for an extended period. See Allen v. Commissioner, 72 T.C. 28, 34 (1979).

Here, petitioners' losses from their gold mining activity steadily decreased each year until 2000, when petitioners reported their first profit from Brown Enterprises. The profit/loss history of Brown Enterprises is summarized as follows:

| Year | Profit/(Loss) |
|------|---------------|
| 1995 | ($20,339) |
| 1996 | (14,993) |
| 1997 | (13,896) |
| 1998 | (5,056) |
| 1999 | (2,681) |
| 2000 | 203 |

The only tax returns of petitioners that were submitted into the record were for 1996 and 1997, and detailed financial information about other years is not available on this record. Consequently, the cause of petitioners' diminishing losses, whether it be increased revenue or cost-cutting measures, or both, is unclear. Regardless of the cause, petitioners' progress from substantial losses to modest profitability is significant.

This factor favors petitioners.

7. The Amount of Occasional Profits Generated by the Activity

The amount of profits earned in relation to the amount of losses incurred, the amount of the investment, and the value of the assets in use may indicate a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. An opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated. Id.

In this case, petitioners' losses from Brown Enterprises in comparison with its revenues during the years in issue are substantial. For 1996 and 1997, petitioners reported total expenses of $15,219 and $14,276, respectively, and gross income of $226 and $400, respectively.

We have recognized in prior cases that a gold mining enterprise is speculative and may take years to realize a profit, but that it also presents an opportunity to earn substantial profits. See Tinnell v. Commissioner, T.C. Memo. 2001-106. The record in this case shows that petitioner entered upon his mining activity with the hope that by operating on a very small scale he could minimize expenses and achieve modest profitability. He also anticipated that if he found any significant amount of gold, he would file a claim and sell it to a mining company for development. Petitioner entered this activity with the belief

that if a significant amount of gold were found, the return would be so great that any past accumulated expenses would be recouped and a substantial profit would be realized. See sec. 1.183-2(a), Income Tax Regs. ("it may be found that an investor in a wildcat oil well who incurs very substantial expenditures is in the venture for profit even though the expectation of a profit might be considered unreasonable.")

The possibility of a speculative profit becomes less speculative when a taxpayer shows he actually realized a profit in years subsequent to those at issue. See Hillman v. Commissioner, T.C. Memo. 1999-255; Hoyle v. Commissioner, T.C. Memo. 1994-592. Here, petitioner's efforts to bring his gold mining activity to profitability were succeeding; his net losses from Brown Enterprises decreased each year until 2000, when he reported a small profit. His uninterrupted path to profitability supports the conclusion that he had a bona fide profit objective during the years in issue.

8. Petitioners' Financial Status

The fact that the taxpayer does not have substantial income or capital from sources other than the activity in question may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate a lack of profit

objective, especially if there are personal or recreational elements involved.

The Browns are not wealthy people. During the years in issue, petitioner reported wages of $34,689 and $42,811, respectively, while Mrs. Brown did not work for compensation. Their only source of income was petitioner's wages. Although petitioners were able to offset the full amount of the losses from their gold mining activity against Mr. Brown's wages, the resulting tax benefits to petitioners were not very substantial. This activity was not a tax shelter. This factor favors petitioners.

9. Elements of Personal Pleasure or Recreation

The presence of personal or recreational elements in carrying on an activity may indicate that the activity is not engaged in for profit. On the other hand, a profit objective may be indicated where an activity lacks any appeal other than profit. Sec. 1.183-2(b)(9), Income Tax Regs.

At trial, no significant testimony or evidence was presented about any personal pleasure or recreational aspects of gold mining that petitioner may have enjoyed. Nearly every week during the years in issue, petitioner sacrificed his entire weekend with his family to travel alone into the deserts of southern California to mine for gold. Family members rarely accompanied him. Also, the risks of injury petitioner faced on

his mining expeditions were substantial. In a recent consideration of mining for gold and precious metals in the southwestern United States, this Court found that such gold mining is "an extremely laborious activity that requires substantial time, energy, and financial support. Mining also entails numerous health risks, including heat prostration in the summer months, silicosis, and cyanide poisoning." Tinnell v. Commissioner, supra. In light of the hardships and serious dangers involved, we are convinced that any personal pleasure or recreational aspects that petitioner might have enjoyed while mining for gold were secondary. Moreover, some component of personal pleasure does not negate a bona fide profit objective. "[A] business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility. 'Success in business is largely obtained by pleasurable interest therein.'" Jackson v. Commissioner, 59 T.C. 312, 317 (1972) (quoting Wilson v. Eisner, 282 F. 38, 42 (2d Cir. 1922)); see also sec. 1.183-2(b)(9), Income Tax Regs. This factor favors petitioners' position.

### Conclusion

In this case we are satisfied that, despite the substantial losses over an extended period, during the years in issue petitioners had a bona fide profit objective. This conclusion is far from unique. See Engdahl v. Commissioner, 72 T.C. 659 (1979)

(net losses in 12 of 12 years); Allen v. Commissioner, 72 T.C. 28 (1979) (net losses in 12 of 12 years); Hoyle v. Commissioner, T.C. Memo. 1994-592 (net losses in 16 of 16 years). Gold mining, especially, is an activity in which sustained losses are not unusual. See Tinnell v. Commissioner, supra (finding the requisite profit objective in gold mining activity although the taxpayer had no income from mining during the first 9 years of the activity and losses in 11 of the subsequent 11 years). Here petitioner has made a major commitment of his time, energy, and resources in hopes of locating a valuable mining claim on property that was mined and abandoned long ago. He goes prospecting in the inhospitable desert of southern California 3 days out of 7, month after month, and leaves his family behind. To be able to do this he works 10-hour days, 4 days each week. He has studied mining, in which he already had a background, and has devised lightweight equipment that enables him to venture beyond where vehicles can go. Periodically he peddles gold nuggets at fairs. Petitioner seeks, and in our judgment sincerely hopes to find and establish, a claim that is rich enough to sell to a mining company for exploitation. He seeks royalties from such exploitation.

We would not voluntarily endure the privations petitioner endures or spend our time and resources as he has. We doubt that his business plan is reasonable. But on this record and after

listening to petitioner's testimony, we are convinced that he had an actual and honest objective of making a profit from his gold mining activity. The evidence in this case simply does not support any other conclusion. We hold that petitioners' gold mining activity during the years in issue was an activity engaged in for profit within the meaning of section 183.

The parties have stipulated that petitioners actually expended the amounts claimed as deductions on Schedules C of their 1996 and 1997 tax returns. Respondent disputes whether the amounts in question were expended for the claimed purposes. Petitioner testified that he expended the funds in the amounts and for the purposes listed on the tax returns. Respondent cross-examined him without noticeable success. We consider petitioner's testimony on this subject credible. The deductions claimed are reasonable. We sustain petitioners on this issue of substantiation.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.